I understand Judge Bryson that you and I have to entertain a motion this morning from, it's probably been a little while since you've made any motions before the court. You know how to do it? I'll try. Okay, you're acknowledged. Thank you Chief. It's a great honor and privilege for me today to move the admission of Stephanie Meyer. Ms. Meyer is a graduate of George Washington Law School and perhaps more importantly, certainly more importantly for me, she is my very first law clerk ever since I just started here about six months ago. Although I am not her first judge and she also worked for my colleague with the Chief before coming to work with me. Stephanie has been a tremendous law clerk in addition to the normal law clerk duties, legal research, writing, drafting opinions, and things like that, she's had to do extra work and help me figure out how to be a teach me patent law because I didn't really have a patent law background before I got here. So she's been a skilled, thoughtful clerk. She quickly masters the most difficult cases and I'm very confident that she's not only going to be a fine lawyer but a very fine addition to the bar of this court. So that said, I move the admission of Stephanie Anne Meyer who is a member of the bar and in good standing with the highest court of New York. I have knowledge of her credentials and I am satisfied that she possesses the necessary qualifications. Well, Ms. Meyer, you've obviously straightened out two of the judges on the panel. Would you like to take Judge Bryson in the next room and make sure he knows what to do today? That's a monumental task. If we could acknowledge, just a second, I presume that we're going to approve this as an attorney and counselor of this court of right and according to law, they will support the Constitution of the United States of America. Thank you. Congratulations, welcome to the Federal Circuit of Law. Proud moment for all of us, Ms. Meyer. Our first case this morning is Johnson versus Shinseki. We're pleased to have Mr. Stoltz. Thank you, Your Honor. Good morning, Your Honors, and may it please the court. Veterans Court's error in this case is in misinterpreting the provisions governing an award of total disability based upon individual unemployability and using the wrong legal standard. Further error lies in failing to afford proper deference to VA's interpretation of its regulations. Total disability ratings are to be assigned for an individual when there's present any impairment of mind or body sufficient to render it impossible for the average person to follow a substantially gainful occupation. In this case, the board concluded that even though the veteran is unable to work as a commercial truck driver, which was his past experience, he is not unable to pursue any type of substantially gainful employment available in the national economy. Simply put, the Veterans Court and the board did not relate the regulations, VA's own adjudication materials make clear that the adjudicator is to assess an individual's employability picture, including the effects of his service-connected condition, his education, and his work history. What's Mr. Stoltz, the legal problem we have here? We all know we're not going to be able to deal with a factual determination as to whether or not he was employable. What's our legal problem? Absolutely, Your Honor. The legal problem in this case is the legal standard that was endorsed by the Veterans Court and that the Board of Veterans Appeals did not interpret or apply correctly. The analysis given for whether Mr. Johnson can obtain and retain substantially gainful employment is sparse, and it's based upon two examinations essentially, and throughout the analysis in the examinations and in both the adjudications below, it refers to many individuals can do this. Mr. Johnson works as a truck driver, but there are so many other occupations available in the national economy. There are things that people with profound hearing loss can do, but that's not the standard. I don't think it's questionable, at least in my mind, that people with profound hearing disabilities do often retain and follow substantially gainful employment, but that's not the question. Was this argument about the Board applying the wrong legal standard made to the Veterans Court? Because what I see is you made a reasons and basis challenge to what the Board did, making basically the same arguments that the Board didn't provide a sufficient reasons and basis, but it didn't seem to me that you made a legal argument that the Board applied the wrong legal standard. It is a fine line, Your Honor, in a case like this, because the legal standard needs to be articulated by the Board. I acknowledge it is a fine line. I think in our pleadings we did talk about the questions of law. We did cite absolutely in the pleadings of the Veterans Court 7104D1, the reasons and basis of statute, but I think that that was at the end of our argument and that we were basically pleading that the wrong legal standard was used here, and I think that that's what we pled, and that is certainly what we are pleading here today, and that's the error that the Veterans Court made. It is impossible, Your Honor, to adjudicate this case, I think, without looking at the Board's decision. We have to know what the Board did and how many times it dissented any individuals, but we're here, obviously, in 7292, and I'm asking for a review of what the Veterans Court did. What the Veterans Court did was essentially a ratification of the Board not applying the correct legal standard. It was, I think, a page and a half, basically just saying, again, a lot of individuals with these conditions can work in the national economy, so Mr. Johnson must be able to, too. I'm, of course, paraphrasing, but that's the question. I acknowledge, Your Honor, it is a fine line between a reasons or basis challenge and whether or not the correct legal standard is used here, but today I believe it is the latter. I believe it's the incorrect legal standard. Now, Judge Cassell's writing a one-judge opinion here, which we kind of understand is just a quick recitation, not going into a lot of detail. Is there something in here that leads you to believe that he was way off base? Because I've looked at it, it is short, but he seems to be just saying that he needs to approve the Board, right? And, of course, Your Honor, absolutely, the Veterans Court does not owe a reasons or basis standard to this Court or anything like that, but again, he is ratifying what the Board did at page basically 81 of the appendix that's attached to the blue brief, and he doesn't offer really any more analysis other than that, other than to just say that, you know, it looks good. There are other decisions from the Veterans Court, Beatty included, where the Court really does go through the factors that are in the correct interpretation, they go through. The Veterans Court didn't do that in this case, and it's hard, it is hard to find the specific legal error that the Veterans Court made. That's what I'm looking for. It's tough, it's tough, but it, and you have to read it, I think, in conjunction with what the Board of Veterans Appeals did, because it keeps saying these many individuals, and when the Veterans Court writes at page 2, when the Board decision on its base is not predicated on mere conjecture, and then the Veterans Court goes through and just kind of lists some of the findings the Board made, I think that's where the legal error is here, because at that point, there should have been an analysis under the correct legal standards that VA has articulated in its regulations, that the Court has articulated in the past, and there is no, there's nothing offered in that. This individual unemployability, because it is a little bit special, because it's not, you know, there's not a clear diagnostic code, it's been recognized time and time again, it's a very subjective type of case, I think that more than just a ratification of a lot of individuals with these conditions can work in the national economy, is owed under the legal standard. I think that because it's individual unemployability, I would ask the Court to look at this decision differently than perhaps if I were asking, or if Mr. Johnson were asking, for a simple increase rating for his knee condition or something like that. I just think because of the subjective component, because there are, there's this great deal of material on how this is supposed to be done, and it is done well often. The Department of Veterans Affairs often does a good job and goes through this, but in this case, they did not. Having trouble, and this is really a follow-up to the Chief Judge's question, with the same, with the same issue. I've read the Board's opinion at page 81 and 82, and of course, the Veterans Court's opinion on this issue at the top of page 2, and there is repeated reference to his individual circumstances in both of those. So I'm having trouble finding, in either the Board's analysis or the Court's analysis, any place where they said, regardless of his individual circumstances, a person with hearing disabilities could do this kind of work, and we're not concerned about his individual situation. It seems to me they said exactly the opposite. Can you point me to some place where the Court or the Board did what you think is the legal error? I, I, Your Honor, I think that page 2, as you alluded to, and I think that pages 81 and 82 are probably a little bit more important. Well, let me, the most important thing is what the Court said, because we can only review the Court. We're not reviewing the Board. Sure. And so only, your argument has to be that the Court endorsed the legal standard that the Board adopted, and that's the only way we can get at this legal question. And what the Court is saying, as I read it, is the examiner reviewed the claims file, noted Mr. Johnson's individual, occupational history, enumerated potential difficulties in employment as part of her individual written analysis, leading to her opinion that Mr. Johnson's hearing difficulties and related factors would not significantly affect his, his vocational potential, and then concludes Mr. Johnson fails to demonstrate that the report is inadequate, or that the Board clearly erred in assigning it. Wait, that's all I see by way of the Court's analysis, and it all sounds quite individually focused. Where is it not? There are, there is a list of some of the things that affect Mr. Johnson, and at the bottom of page two, and going on to page three, and, and the Veterans Court does say it's facilitative of judicial review, and they, and they make these pronouncements. What my argument is, is that these pronouncements that they are making are broad. Yes, there is a recognition of Mr. Johnson's past work. Yes, there is a recognition, I think one line about his educational history. Is your argument, then, that the Board didn't do its job well enough, that it should have more explicitly explained its analysis of the TDIU factors? That would be a reasons-or-basis challenge, and I know I'm walking that line. I know I'm walking that line, Your Honor. Well, I think also in Smith, right, we said you don't have to be that specific, and look, you don't have to get some kind of vocational analysis, and look at that. You have, you do have to make individually tailored arguments, but they don't have to be that specific. But, but, but Your Honor's point where you, where you, where you talked about where in Smith, you do need to make an individual analysis, and this dovetails back to Judge Bryson's inquiries as well. The individual analysis is, is still lacking here, because, yes, they go through it, and they kind of list it out, and they say, here's what Mr. Johnson did. But the Veterans Court said you have to do an individual analysis. It articulated the wrong legal, or the right legal standard, didn't it? It articulated the standard that it has to be an individual. And it may have misapplied it, but we don't get a review that, do we? But I think that the correct legal standard being applied is something that this Court should be able to, it is something that can be reviewed. The correct legal standard under... Isn't that application of law the fact that's specifically prohibited by 7292? Because it's, it's, because we are not asking the Court to get in and really analyze whether Mr. Johnson can work or not, given his individual circumstances, and to go through the M21 provisions. What we're asking for is merely this, merely that the Veterans Court be commanded to apply the correct legal standard, which in the Smith case that we cited in the blue brief, this Court did for the Aegis standard, for example. I'm sorry. Oh, you can finish. Thank you, Your Honor. For example, in the Smith case, when the Court declined to get into any, any factual findings, but did say that the Court could review whether the correct standard was used. And that's what we're asking for here today, whether the correct standard was used. Let me ask you to turn to the question of the national economy versus local community economy. I want to make sure I understand what your argument is here. And let me give you a hypothetical. Suppose I live in Buffalo County, South Dakota, which is, I think, the poorest county in the country. All right. Average per capita income is about $5,000, and it's nowhere near any other place where work can be had. I'm a PhD biochemist, but there's no work in Buffalo County for PhD biochemists, and I have a 60% disability. If I were living anywhere else, and indeed if I moved somewhere else, I could get a job teaching biochemistry at the University. Am I TDIU? I think that that is an adjudication that has to be done according to all of the, to the correct legal standard. Well, of course, all adjudications have to be done according to the correct legal standard, but what I want you to focus on is, does, does the VA have to look at my local community and say, there are no jobs for biochemists in that community, and therefore, he is TDIU? I think that the, that the analysis that would probably have to be undertaken there is, yes, they need to look at that, and they need to say there is no work for a biochemist, and Judge Bryson is a trained biochemist. And truly there's no work for anybody. There are no jobs. Let's, let's just hypothesize. It's pretty close. There are no jobs. There are no jobs in that local community or within a commuting distance. Am I TDIU? I think under the, the VA's interpretation of its regulation, I think in that, even in that extreme example, I think yes. I think that you are TDIU. I think the answer to that question is yes. But they do need to go into the analysis. It wouldn't stop just, Judge Bryson is a PhD biochemist, and so there are no... But if he moves a hundred miles to Fargo, he can teach at South Dakota State. But that's not contemplated by the regulations, by the regulations or the M21. There's no provision that a veteran needs to move to Fargo or to move to a hundred miles away... He could even commute. I mean, he could even commute if he's willing to get in his four-wheel drive and go to Fargo, he can teach. And I think that'd be a very different case. I think that under Judge Bryson's question, the answer is yes, but I still think that the analysis would have to be done. And if a finder of fact did say, yeah, but you can drive a hundred miles and make, you know, a substantial wage, that's a different case. That's a totally different case than what we are here. Because what that presupposes is that the VA did its job. That the VA did actually run through what Judge Bryson's individual circumstances were, and we'd have, and I could have an answer today. I probably wouldn't be before this court, but I could be before a finder of fact and say, no, this fact is wrong. And then we'd be in a factual scenario. I could say, nope, it's clearly erroneous. So that's a totally different case than what is outlined here today. Okay. Thank you. Thank you. By the way, I think Fargo's in North Dakota. I think the court just missed its geography test. Mr. Goodman. Good morning, Your Honor. The board's decision clearly goes through the veteran's individual circumstances in this case. Talks about his termination from self-employment. Talks about the job he got thereafter. Do me a favor. Take the Judge Bryson's hypothetical and tell me what the government really feels about that and why. In that hypothetical, there is no TDIU because he's not whether his disabilities alone rendered him to be unemployable. Let me take it one step further. That 60% disability includes, he really can't drive. Eyesight problems and foot problems, whatever. He can't drive. So he really is stuck in Buffalo County. Now is he TDIU? It depends, in that case, whether those additional disabilities are service-connected or not. Because the... Assuming they are, then yes, it could be. Because the VA is supposed to look at the individual and the combination of service-connected disabilities and see if those service-connected disabilities render him unemployable. And it could very well be that somebody's unemployable. In today's day and age, probably he could work online. But that aside, it's possible for somebody to be unemployable in that circumstance. Which is an important point that what the VA has to do is not look at the individual and say, can he find work? It's do his service-connected disabilities render him unable to find work? And that's what the VA did here. And they did this objective analysis. They did exactly what he's asking this court to tell them to do. They did that. They found that looking at his particular employment history... Did they apply the right standard? Because on page 80 of the appendix, that's the board's opinion at page 9, at the bottom, they say you get a TDIU rating when service-connected disabilities result in such impairment that an average person is so disabled. But that's not the standard for TDIU, is it? I'm sorry, it's the last paragraph on page 80. The standard isn't whether an average person is so totally disabled. It's whether this person subjectively can't be employed. In general, the question is for an average person, and then you apply also, pursuant to 4.15 and 4.16, you look to whether there's something specific about that individual to see if that individual is entitled to TDIU above and beyond what the average person with that disability would have. So this is a correct articulation of the standard, and the board then goes on, after looking at an average person with this disability, to say, let's look at this veteran in particular. Let's look at where he's worked, how he was employed, how he lost his employment, and see if there's something particular about him and his hearing loss that would require something above and beyond the normal scheduler rating. And the conclusion, in this case, is based largely on some examiner reports. They're pretty skimpy, and particularly one of them talks about, you know, he could work in something using computer skills, but given his educational attainment, that seems like the examiner hasn't really looked at his particular disability picture and background, because I don't think there's anything in the record that suggests that he has an educational level that would even come close to permitting him to work in computer fields. So isn't it, again, that the examiner is not really looking at this in an individualized way, but saying, hearing loss doesn't prevent an average person from working on a computer? Two responses, Your Honor. First, of course, is getting into the facts, but that aside, Dr. Martine's analysis, she said that he could work in computer or other jobs relying on more visual or trait skills. So she wasn't just saying computer. Also, the record reflects that he has two years of college. So this isn't a situation where it's somebody who didn't finish high school and might not be able to do computer jobs. In fact, this person was in college, so presumably that's very reasonable in this case. Moreover, there's a second opinion. After remand, they got a second doctor to look at the same information and to do the analysis, and looked at him and addressed what specifically, with respect to his disability, what kind of problems he would experience, and said these kinds of problems aren't the ones that would prohibit employment. It's true that... What training do these doctors have in market economies and abilities to weigh employment factors? I mean, doctors I think of as great to help me with my shoulder soreness, but I'm not really sure I look at them as an employment specialist. That's absolutely true, Your Honor. The answer is, I think, not much. I don't know that doctors are receiving a lot of training in determining what kinds of jobs somebody can do, but it's an interesting reality we're in. Take an example other than hearing loss, something like depression. We need the doctor to say, can this person work? Is their depression so severe that they can't work in an office environment? In something like hearing loss, it seems more intuitive. We can know, the average person on the street can say, I've worked with people who have severe hearing loss, and they can work in an office environment. Yes, but hearing loss takes different forms. In this case, word would be the doctors that would make those kinds of determinations, presumably. Yes, so doctors' analysis is certainly helpful. They don't look to whether certain jobs are available, and they may not always be able to say, he can do this job or another, because they don't know all the requirements of a job. Generally, it's certainly very helpful, and this Court has therefore required that there has to be, and the Veterans Court has gone much further into this requirement, that there has to be some analysis by the VA based on evidence, meaning based on doctors' opinions, of whether this person is employable, in fact. What do you do with the Dr. Nash situation, where you have someone with grave mental and physical disabilities, but are also incredibly productive people, and are able to win a Nobel Prize, for heaven's sakes. How does that sort of thing get factored into, and I'm sure the equation could go the other way, somebody who's completely healthy and absolutely unemployable. The ratings, generally, are designed to compensate based on the average. So all those kinds of outliers are supposed to be taken into account, and the numerical value assigned to a disability, it reflects the average amount that this person's employability is affected by their disability. So that should all be taken account of by the attorney general. Now, after we've got the average number, and we know that this person has an 80% rating, now the question is, is there something about his hearing loss in particular? To go to Judge Bryson's point, there could be severe problems with recognizing individual words, or something dealing with a certain pitch of the sound, that makes it actually much more difficult for that person's hearing loss, despite the 80%, that that person might not be able to work in an office environment. And so that's the individual analysis that's done above and beyond that. That analysis was done here. Both the doctors looked at him in particular and said, there's nothing about his hearing loss that appears to prohibit him from having a job. And the board followed through on that, said that was reasonable, provided reasons and basis for supporting that, and there's nothing, I'll end if the court has no further questions, but just local community stuff. I mean, the VA's manual says you have to look at the local community, and it's not clear from the record that there's any evidence about the local community. I understand there's references to the fact that he did have jobs in the local community, but I'm not sure that there's anything more specific than that. Do you agree that they have to look at the local community, based upon that regulation, on the manual? No. The idea is that they have to be doing, they have to be able to do work that is equivalent to what people in the local community are doing that would achieve a more than marginal salary. So the idea is to look to what people locally are doing, what kinds of work that would get them more than It's not the same as saying, is there something locally that's available for this veteran to do? Maybe this is what you're saying, but I understood that, at least the quoted portion of the manual, to be referring to the problem of needing to look at what the earnings for a particular occupation were in the local community, and then deciding whether the disabled veteran is making a salary that's commensurate with that level. In other words, if you have plumbers in, say, South Carolina, that typically will make $20,000 a year, and plumbers in San Francisco make $80,000 a year, then you would look at the plumbers in South Carolina, if he's living in South Carolina, and say, well, he's making $18,000 a year. That's commensurate with the level of the plumbers in his community, even though plumbers elsewhere make more money. Isn't that what the manual is saying? You articulate it much better than I, Your Honor. Yes, that's what we think that the manual is trying to get to. The manual guidance, I should say, for the adjudicator to, in the first instance, make this determination. So the manual doesn't go into great detail about how to do such analysis, but it tries to apply the guidance from the regulation and say, we need to look at whether this person's employment, ultimately, is marginal. If they can only do marginal employment, that's not enough to prohibit them from being TDIU. So can they do something that would get them more than that marginal employment? And that's the idea. And it is, to some degree, a question of the local economy, because there's a big difference between San Francisco and South Dakota. Well, actually, two more questions. The first is about income. Now, does that mean that somebody who has vast income from investments is entitled to TDIU, even if they have a disability that makes them incapable of working? Yes, I think somebody's individual wealth. So Warren Buffett, if he had a military injury, could be getting TDIU. Yes, I think that's right. All right. Second question, which also relates to Warren Buffett. This, Mr. Johnson, I infer from his appendix, is 70 years old. Does TDIU, how long does TDIU last? Does that last until you're dead? I don't think there's a limit. I think that's right. So even, you're 95, and you're not disabled, you have a disability that's 60%. Does that mean that you're entitled to TDIU? Like the availability of work, the VA specifically says you're not supposed to look at age. You're not supposed to look at non-service-connected disability. None of those other things are relevant. So the question is only, does this disability itself render you unemployable, irrespective of age? So, I want to ask, sorry, this isn't really relevant to this case, but I seem to recall cases, I'm curious about this position you're taking, because I seem to recall cases where somebody had been retired for a long time and came in and finally got a disability rating and the like, but it wasn't enough to get full compensation, and they tried to argue for TDIU, but they'd been retired for the previous 20 years. In those circumstances, would they still be able to say, even though I've been officially retired for 20 years, I should get back benefits because I would have been TDIU? And if not, could they still get them going forward? They'd probably be unsuccessful in so arguing, because a factor is what, whether they've obtained gainful employment, including the last five years, and the VA specifically asked the recent employers, was he able to work? Why did you let him go? And, you know, that's relevant. Do they have to be hypothetical? If, you know, they have officially retired and they're not looking for employment anymore, is that a factor that the VA gets to consider in making a TDIU award? There's no explicit requirement that I'm aware of that the VA look at whether they're trying to find work in the meantime. It could be that their disability is so severe that it's prohibited them from finding work. You can also imagine a situation where they just didn't want to work, so they weren't searching for work. All these seem to be relevant to the VA's analysis of whether this person is, and that's what they have to do, figure out whether they're employable. Could they be non-employable as a result of the disability? And that's a key here. In bringing it back to this case, Mr. Johnson has other disabilities, including, I think, depression and perhaps a disability related to his service. Those may impact his ability to find work, but VA specifically prohibits it from looking to that. So they have to look at just whether his disability itself, if it's service-connected, has impacted his ability to find work. And that's what the board did here, and on that basis, we respectfully request that the board affirm the decision of the Veterans' Board. Thank you, Mr. Goodman. Mr. Stoltz, you have your rebuttal time. Thank you, Your Honors. The first point I'd like to make is the hypotheticals that have been bandied about today really illustrate the problem with what the two adjudications below did, what the Veterans' Court and the board did. All of these hypotheticals and all of these great questions and all of these, all of this analysis of what an individual's unemployability looks like is precisely what is commanded by law, and it is precisely what the board and the Veterans' Court didn't do. But isn't there, there's a specific factual finding that at one point, Mr. Johnson was working in some kind of, in the health care industry, at above a marginal employment level, and he lost the job. Isn't that a lone indication that he was employable in his local community? It may be an indication, but it's not the end of the inquiry. We don't know when he was working, because marginal employment is not only just what's above the poverty threshold, but whether they made accommodations for him. There's so much analysis that is supposed to go into an individual unemployability assessment. You're really trying to sound like it's a reasons and basis challenge again now. I mean, as long as we can find something that the board looked to, we have enough to agree with the Veterans' Court that they were at least applying the right standard, even if they misapplied it. I disagree with that assessment, Your Honor, because it's not reasons or basis in this case, because it is so well articulated what the legal standards require, and because the legal standard requires the type of analysis that was undertaken here today, and that analysis was not done, it's out of the realm of reasons or basis and into the realm of legal standard. All right. Thank you very much, Mr. Johnson. Thank you, Your Honor.